Appeal of **FRED R. DRAKE.**                    **Docket No. 481.**

On the evidence, *held*, that Drake & Company was a partnership during the years in question.

Under the Revenue Act of 1918, the net income of a taxpayer who keeps no books shall be computed on the basis of a calendar year.

Submitted April 6, 1925; decided May 26, 1925.

*T. McKeen Chidsey, Esq.*, for the taxpayer.
*Willis D. Nance, Esq.*, for the Commissioner.

Before IVINS, MARQUETTE, and MORRIS.

### FINDINGS OF FACT.

The taxpayer is a resident of Easton, Pennsylvania, where he has been in the wholesale grocery business since 1886. Prior to 1900 this business was conducted as a partnership, composed of the taxpayer, his father and uncle. At that time, through inheritance and purchase, he acquired the assets of the business and continued it until June 12, 1911. On that date he entered into an agreement with Jesse S. Carter, who had been a salaried employee for a number of years, which reads as follows:

Articles of Partnership made and entered into this twelfth day of June in the year of our Lord One thousand nine hundred and eleven, between Fred R. Drake of the first part and Jesse S. Carter of the second part, both of the City of Easton, County of Northampton, State of Pennsylvania:

WITNESSETH: That the said parties have agreed and by these presents do agree to associate themselves as co-partners, under the name and style, for the object and for the time and upon the terms and conditions hereinafter set forth, and to the end that the same may be effectually carried out, the said parties have agreed and by these presents do agree, each one with the other jointly as follows:

I. The name and style under which the said parties carry on the said Co-partnership shall be Drake & Company.

II. The object for which the said parties have associated and do hereby associate themselves together, is to carry on business in Groceries at wholesale including Teas, Flour, Tobacco and such other articles as are called for by the General Storekeeper.

III. The said Co-partnership shall continue for the term of five years from the first day of February 1911 and these Articles of Co-partnership shall be taken and shall be as though they had been formally executed on the said first day of February 1911.

IV. The Capital Stock in trade, of the said Co-partnership shall be the sum of Two hundred and twenty-five thousand Dollars, all of which shall be contributed and owned by the said Fred R. Drake and no part thereof shall be contributed and owned by the said Jesse S. Carter.

V. If, however, it shall happen at any time or times during the continuance of the Co-partnership hereby created, that either in order to take advantage of the condition of the market, or for any other like or unlike reason, the said Co-partnership shall or may temporarily need moneys in addition to the said sum of Two hundred and twenty-five thousand Dollars which by Article IV hereof is agreed upon as the Capital Stock in trade of the said Co-partnership, the said moneys so needed temporarily shall not be deemed and taken to be a further and additional Capital Stock in trade, but the same shall and may be borrowed from time to time as and when the same is needed by the said Co-partnership, and the interest on the said loans or any renewal or renewals thereof, shall be paid out of the moneys of the said Co-partnership and not by the Fred R. Drake individually.

VI. All profit, gain and increase which shall arise by reason of the said Co-partnership business, shall be divided among the parties hereto, as follows:

1. The said Jesse S. Carter shall take and receive the full and clear one-fourth part of the said profit, gain and increase, less the sum of Five hundred and twenty-five dollars.

2. The said Fred R. Drake shall take and receive the balance of the said profit, gain and increase after the said shares of the said Jesse S. Carter shall have been deducted from the full amount of the said profit, gain and increase.

VII. The losses that shall happen in the said Co-partnership business by bad debts, bad commodities or otherwise howsoever, shall be paid and borne by the said parties in the same ratio as that in which the profit, gain and increase is to be divided.

VIII. If, however, the losses exceed the profit, gain and increase during the time the said Co-partnership exists, then the amount by which the said losses exceed the said profit, gain and increase is to be borne and paid by the said Fred R. Drake, that is to say, if at the expiration of the Co-partnership hereby created, either by limitation or otherwise, the said business has been conducted at a net loss, the said Jesse S. Carter is to bear and pay no part of the said net loss, but the same is to be wholly borne and paid by the said Fred R. Drake.

IX. The said parties hereto shall cause to be kept during the continuance of this term of Co-partnership, perfect and true books of account wherein each of the said co-partners shall enter and set down, as well all the money by him received and expended in and about the said business, as also all commodities and merchandise by him bought and sold by reason and on account of the said Co-partnership and all other moneys and things in anywise belonging and appertaining thereto, so that either of them may at any time have access thereto.

X. In case either of the Co-partners shall die during the said term, the partnership business shall be carried on by the survivor for the benefit of the firm until the first day of the following February, when the interest of the deceased partner shall be ascertained and the partnership affairs be settled in the same manner and upon the same terms as that provided for in Paragraph XI hereof.

XI. The said parties hereto shall at the end of the term hereby created, make and render each to the other or to the Executors and Administrators of each other, in case of a death or deaths, a true and perfect account of all profits made and of all losses sustained and also of all payments, receipts, disbursements and all other things whatsoever by them made, done, received and disbursed in the conduct of the said partnership business and the account so made shall and will clear, adjust, pay and deliver each unto the other at the time of making such account their respective share of the profits so made as aforesaid, and then shall and will also make a true and final account of all things

as aforesaid, well and truly adjust the same and also that upon the making of such account, all and every the stock, as well as the gain and increase thereof as aforesaid, which shall appear to be remaining shall be parted and divided among the said Co-partners, or their Executors and Administrators, in the ratios aforesaid, that is to say, the entire Capital Stock and increase thereof, shall belong to and be paid to the said Fred R. Drake, or in case of his death to his executors and administrators; and the said Jesse S. Carter or in case of his death his Executors and Administrators, are to take and receive no part of the Capital Stock of the increase thereof.

XII. The net gains and profits are to be parted and divided among the said Fred R. Drake and Jesse S. Carter and in case of the death of them or either of them, then their respective Executors and Administrators, the said Jesse S. Carter, or in case of his death, his Executors or Administrators taking the one full fourth part thereof less Five hundred and twenty-five Dollars; and the said Fred R. Drake or in case of his death, his Executors or Administrators taking the balance of the profits after the said share of the said Jesse S. Carter shall have been paid.

IN WITNESS WHEREOF, the said parties have hereunto set their hands and seals the day and year aforesaid.

                        (Signed)     FRED R. DRAKE.   [SEAL.]
                                     JESSE S. CARTER. [SEAL.]
Witness present:
    F. W. EDGAR.

Upon the termination of the agreement by its terms, it was extended orally without change in its provisions for another period of five years. There was an accounting at the end of each fiscal year of the business, following which Carter received one-fourth of the profits and Drake the balance. When real estate was acquired the deeds were invariably made to Drake. In 1920 a net loss in excess of $60,000 was suffered, which was borne by the taxpayer. Upon the incorporation of the business in 1921 he received stock in the corporation covering the entire assets.

The taxpayer filed his income-tax return for the year 1917 on a calendar-year basis, and for the years 1918, 1919, and 1920 on a fiscal-year basis ending January 31st, this being the basis upon which the books of the business were kept. The Commissioner determined that the business for the years in question was a partnership; that the books were partnership books; that Drake kept no individual books; and therefore computed his tax for the years in question on a calendar-year basis. He notified the taxpayer of an overassessment of income taxes of $3,042.29 for 1918, $2,268.14 for 1919, and of a deficiency of $13,582.83 for 1920, making a net deficiency of $8,272.40. It is from this determination that the taxpayer appeals.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

MORRIS: The Board is of the opinion that Drake & Company was a partnership for the years in question. As the taxpayer kept no individual books the computation of his tax by the Commissioner on the calendar-year basis was proper under section 212 (b) of the Revenue Act of 1918, which provides, *inter alia*, that if the taxpayer has no annual accounting period or does not keep books his net income shall be computed on the basis of the calendar year.